IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Christopher Allen Todd, #306870, | ) | |
| | ) | CIVIL ACTION NO. 9:07-3990-GRA-BM |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Warden Gregory Knowlin, | ) | |
| Officer Corporal Jones, and | ) | |
| Officer Toller, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This action was filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on June 30, 2008.[1] As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on July 1, 2008, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case.

The Plaintiff thereafter filed a memorandum in opposition to the Defendants' motion, with attached exhibits, on August 29, 2008. The Defendants' motion is now before the Court for

---

[1]The Defendants had previously filed a Motion to Dismiss on March 6, 2008, on the grounds that they had not been properly served with process in this case. However, since Plaintiff is proceeding in forma pauperis, and it is therefore the Marshal's responsibility to effect service on the Defendants, the undersigned does not find that this case should be dismissed as result of any service issues. Therefore, to the extent any separate recommendation with respect to the pending motion to dismiss is necessary, it is recommended that that motion be **denied**.



disposition.[2]

## Background and Evidence

Plaintiff alleges in his verified complaint[3] that on June 16, 2007, he was attacked and "brutally" beaten by five other inmates. This attack allegedly occurred at the Turbeville Correctional Institution ("TCI") at 5:45 p.m. (fifteen minutes before a scheduled shift change count and security check). Plaintiff alleges he was going into a friend's room (Room 278) to play cards, but when he walked in front of Room 272, inmate Ian Casey grabbed him, dragged him into Room 272, and choked him until he passed out. Plaintiff alleges that when he came to, Casey as well as inmates Brandon James and (first names unknown) Harris and Smoot began "kicking and stomping" him. Plaintiff alleges that inmate Harris along with inmate Richard Cook then picked him up off the floor and held him while James, Casey and Smoot beat him. Plaintiff alleges the inmates then tried to force him to smoke a cigarette, and when he refused they tried to make him eat the cigarette. Plaintiff alleges they also told him to apologize for being white, and continued to beat him when he refused. Finally, the inmates told Plaintiff that if he reported this incident he would be killed, and told him to go back to his room (Room 266) and not leave it for the rest of the night or he would be beaten some more.

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



Plaintiff alleges that when he got back to his room, he asked his roommate what time it was because he wanted to catch the officers during the shift change count and security check at 6:00 p.m. Plaintiff alleges that this security count is required by SCDC Policy and Procedure. Plaintiff was advised by his roommate that it was already 6:35 p.m., but that officers had never performed a shift change count and security check. Plaintiff alleges he was later told by inmate Larry Powell that the Defendant Officer Toller did come into the unit while Plaintiff was being beaten, but that instead of doing the 6:00 p.m. shift change count and security check, he had just walked to the office at the front of the unit and then left the unit. Plaintiff alleges that Officer Toller did not come back on the unit until the next roll call count at 10:30 p.m.

Plaintiff alleges that the Defendant Corporal Jones was the original officer on duty, and that SCDC Policy/Procedure required that the duty officer and the officer coming on duty (Officer Toller) were supposed to do a "walk around" at the 6:00 p.m. shift change to perform a security check and shift change count. Plaintiff alleges that if these two officers had performed the shift change count and walk around security check as they were supposed to, the beating he received could have been stopped. Plaintiff further alleges that when the roll call count was performed later that night, he tried to speak to Officer Toller about what had happened but that Toller told him he was doing roll call count and would come back to speak to him when he was finished. However, Plaintiff alleges that Toller never came back to speak to him, even though he had showed Toller the bruises on his stomach, chest, back and ribs.

Plaintiff alleges that the following day inmate Casey came into his room and told him that he had seen the Plaintiff talking to Toller at roll call, and that after count time (12:30 p.m.) they were going to beat him again for trying to report this incident and that "this time they would make

3



sure [he] didn't talk again". Plaintiff alleges that he then tried again to speak to the officer (unidentified) during the 12:30 p.m. count time, but was again told that [he] was doing count but would come back after he was done. Plaintiff alleges, however, that when the officer had not come back thirty to forty-five minutes later, he was scared for his life and at that time attempted to commit suicide by hanging himself. Plaintiff alleges that the Defendant Jones arrived soon thereafter, saw him hanging, and cut him down. Plaintiff was then taken to a hospital. Plaintiff alleges that he was examined by a doctor at the hospital, who discovered multiple injuries including a rib fracture, massive bruising on his chest and other areas, and a chipped front tooth, all Plaintiff alleges were the result of his beating on June 16th. Pictures of his injuries were taken by a "Cpl. Brown". Plaintiff alleges that he tried to grieve this matter, but received no response.

Plaintiff alleges that beginning on June 18, 2007, he asked to speak to someone in "mental health" as he was deeply depressed, and that he also sent several request forms to mental health to be seen about depression and anxiety attacks, but as of the date of this lawsuit he had not heard from anyone in mental health. Plaintiff alleges that on July 16, 2007, he had a mental and nervous breakdown, that he spoke with a "Ms. Smith (counselor at Turbeville)" on July 19, 2007, but although she said she would see what she could do, he (Plaintiff) never heard back from her. Plaintiff alleges that he also talked to other correctional officials, including Bruce Oberman, "Cpt. Franks", and "Ms. Pasley", but that nothing was ever done. Plaintiff alleges that it was not until October 9, 2007, that a "Dr. Kirby" moved him from the lockup at the Lee Correctional Institution (where he had been moved following the attack) to the Gillian Center, presumably for mental health treatment. Plaintiff also alleges that he has written seven request forms since July 10, 2007 to see a medical doctor about injuries to his back, but that as of the date of the filing of his complaint he had



still never seen a doctor about his back.

Plaintiff seeks monetary damages due to the Defendant Officers' failure to follow SCDC policies and procedures, which resulted in his beating at the hands of other inmates, as well as for improper medical care and treatment following this incident.  See generally, Verified Complaint, with attached exhibits [Copies of inmate grievance and letters.]

In support of summary judgment in the case, the Defendant Gregory Knowlin has submitted an Affidavit where he attests that he is the Warden at TCI.  Knowlin attests that, in this position, he oversees the general day to day operation of the institution, but is not directly responsible for supervising any inmates.  Knowlin notes that no specific allegations against him are asserted in the complaint, and further attests that prior to the incidents of June 16 and 17, 2007, Plaintiff had never communicated to him that he had been threatened by any other inmate or that he believed he was at risk of harm from any other inmate.  Knowlin further attests that prior to those incidents, he had received no information from any source which indicated that Plaintiff had ever been threatened by another inmate, that he believed he was at risk of harm from any other inmate, or that he was in fact at risk of harm from any other inmate, nor had he received information from any source which indicated that Plaintiff was suicidal.  Finally, Knowlin attests that he did not have any responsibilities involving the direct provision of medical care or treatment to inmates at any time relevant to this action, including the Plaintiff, and at no time was he deliberately indifferent to any serious medical need of the Plaintiff.  See generally, Knowlin Affidavit.

The Defendant Jones has submitted an Affidavit wherein he attests that he is a Corporal at TCI.  Jones attests that he followed all SCDC policies and procedures as well as State and Federal laws and regulations, and that with regard to his actions involving the Plaintiff on June

5



16, 2007, he responded to all situations involving the Plaintiff promptly, appropriately, and in accordance with all applicable SCDC policies and procedures, and that he performed all duties that were required of him under SCDC policies and procedures, including all required walk throughs of the unit at issue. With respect to June 17, 2007, Jones attests that when he came on duty the Plaintiff did not say anything to him about his being assaulted, threatened, or in any danger of being attacked, that when he was getting ready to make his rounds he noticed Plaintiff hanging with a shoestring around his neck, and that he then entered Plaintiff's cell and cut him down, at which point Plaintiff thanked him [Jones] for saving his life. Jones attests that he then contacted the first responder to initiate the process by which Plaintiff would receive medical care.

Jones further attests that prior to the incidents of June 16-17, 2007, Plaintiff had never communicated to him that he had been threatened by another inmate or that he believed he was at risk of harm from any other inmate, nor had he received information from any other source which indicated that Plaintiff had ever been threatened by another inmate, that he believed he was at risk of harm from any other inmate, or that he was in fact at risk of harm from any other inmate, nor had he received information from any source which indicated that Plaintiff was suicidal. Finally, Jones attests that he does not have any responsibilities involving the direct provision of medical care or treatment to inmates of the SCDC, including the Plaintiff, and that at no time has he been deliberately indifferent to any of the Plaintiff's serious medical needs. See generally, Jones Affidavit.

The Defendant Bobby Toller has submitted an Affidavit wherein he attests that he is a correctional officer at TCI, and that he followed all SCDC policies and procedures as well as State and Federal laws and regulations in his actions involving the Plaintiff. Toller attests that he was assigned to the Plaintiff's unit at TCI on June 16, 2007, and on that day he performed all duties that



were required of him under SCDC policies and procedures, including all required walks through the unit, and that to his knowledge and memory, Plaintiff did not on that date ask to speak to him or show him any bruises or red marks on his body, nor did he indicate that he was being threatened with harm by other inmates. Toller attests that he did not have any knowledge of the assault on the Plaintiff until after the incidents of June 16 and 17, 2007, and that prior to those dates Plaintiff had never communicated to him that he had been threatened by another inmate or that he believed that he was at risk of harm from any other inmate. Toller further attests that prior to those dates, he had received no information from any source that Plaintiff had ever been threatened by another inmate, that he believed he was at risk of harm from any other inmate, or that he was in fact at risk of harm from any other inmate, nor had he received information from any source which indicated that Plaintiff was suicidal. Finally, Toller attests that he does not have any responsibilities involving the direct provision of medical care or treatment to inmates of the SCDC, including the Plaintiff, and that at no time has he been deliberately indifferent to any of the Plaintiff's serious medical needs. <u>See generally</u>, Toller Affidavit.

Finally, the Defendants have submitted copies of numerous documents from Plaintiffs file, including incident reports, an SCDC mental health observation form for the Plaintiff dated June 17, 2007, a protective custody evaluation for the Plaintiff dated June 21, 2007, as well as staff memoranda for the dates of June 17, 2007 through June 24, 2007, a transfer history for the Plaintiff, and health services medical summaries for the Plaintiff from May 17, 2007 through June 22, 2007.

As attachments to his memorandum opposing summary judgment, Plaintiff has attached copies of inmate grievance forms, as well as an MRI from February 8, 2008.



## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

## I.

### (Potential Liability of the Defendants)

As employees of the South Carolina Department of Corrections, Knowlin, Jones and Toller are all subject to suit for damages under Section 1983 in their individual capacities. Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989); Hafer v. Melo, 112 S.Ct. 358, 365 (1991); Goodmon v. Rockefeller, 947 F.2d 1186 (4th Cir. 1991); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977). Construed liberally, Plaintiff is asserting his damages claims against these Defendants in their individual capacities.

With respect to the Defendant Knowling, however, there is no evidence, nor even any



allegations, that this Defendant had anything whatsoever to do with the events surrounding Plaintiff's failure to protect claim, or his claim that he was denied adequate medical care. Rather, it is readily apparent that the only reason Knowlin has been named as a Defendant in this case is because he was the Warden at TCI during the relevant time period, and therefore had overall supervisory authority for that prison.

The doctrines of vicarious liability and respondeat superior are not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-929 & nn. 1-2 (4th Cir. 1977). Therefore, unless Plaintiff has set forth allegations of specific wrongdoing on the part of the Defendant Knowlin, he may not be held liable for the acts of others absent an official policy or custom for which he was responsible and which resulted in illegal action. See generally, Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Wetherington v. Phillips, 380 F.Supp. 426, 428-429 (E.D.N.C. 1974), aff'd, 526 F.2d 591 (4th Cir. 1975); Joyner v. Abbott Laboratories, 674 F.Supp. 185, 191 (E.D.N.C. 1987); Stubb v. Hunter, 806 F.Supp. 81, 82-83 (D.S.C. 1992); See Slakan v. Porter, 737 F.2d 368, 375-376 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 115 S.Ct. 67 (1994); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-1143 (4th Cir. 1982) (citing Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980)). Plaintiff has made no claim of any official policy or custom of the Defendant Knowlin which resulted in the allegedly unconstitutional conduct here. To the contrary, at least with respect to his failure to protect charge, Plaintiff specifically alleges that the other Defendants' actions were in direct violation of prison policy.

As for Plaintiff's medical care, one of the exhibits attached to Plaintiff's complaint is a copy of a letter to Warden Knowlin dated September 29, 2007, in which Plaintiff complains



about the medical care he is receiving and asking if the "information pertaining to my case" can be sent to him. See Court Docket No. 1-2, pp. 10 and 11. It is not clear if this was part of a grievance or was just a letter, or whether Knowlin ever received this purported letter since it appears to be a copy and there is no filing information, nor any response in the evidence. This exhibit also indicates that it was written to TCI after Plaintiff had already been transferred to the Lee Correctional Institution as part of being placed in protective custody following the incident of June 16, 2007, and therefore does not in and of itself indicate that the Defendant Knowlin was responsible for any custom or policy which unconstitutionally denied Plaintiff medical care, particularly in light of Plaintiff's failure to make any allegations whatsoever concerning Knowlin in his complaint. Liability may not be imposed on Defendant Knowlin simply because he was the warden at a facility where Plaintiff was previously housed, and who would not have been responsible for Plaintiff's medical care following his transfer in any event. Cf. Hyrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) ["[T]here is no pure respondeat superior liability under §1983, [and] a supervisor [may only be held] liable for the constitutional violations of *subordinates* 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.' "(quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989))]. [emphasis added]. Therefore, the Defendant Knowlin is entitled to dismissal as a party Defendant in this case.

## II.

### (Failure to Protect)

With respect to the remaining two Defendants, in order to proceed with his failure to protect claim, Plaintiff must present sufficient evidence to create a genuine issue of fact as to whether either named Defendant had actual knowledge of a substantial risk of harm to him, and was

10



deliberately indifferent to that substantial risk. <u>Washington v. LaPorte County Sheriff's Department</u>, 306 F.3d 515 (7th Cir. 2002). <u>See generally</u>, <u>Farmer v. Brennen</u>, 114 S.Ct. 1970, 1978-1979 (1994); <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991); <u>Bagola v. Kindt</u>, 131 F.3d 632, 646 (7th Cir. 1997). To show deliberate indifference, Plaintiff must present evidence to show that "the officials act[ed] with a sufficiently culpable state of mind." <u>Strickler v. Waters</u>, 989 F.2d 1375, 1379 (4th Cir.  ), <u>cert.</u> <u>denied</u>, 510 U.S. 949 (1993) (quoting <u>Wilson v. Seiter</u>, 501 U.S. at 298); <u>Bagola</u>, 131 F.3d at 646 ["Although prison officials need not intend that a known risk will actually harm an inmate, they must intentionally ignore this known risk in order to be liable under the Eighth Amendment."]. Considered under this standard, Plaintiff's failure to protect claim suffers from several infirmities.

First, Plaintiff makes no claim whatsoever that either Jones or Toller had any knowledge that he was in any danger from the five inmates who assaulted him prior to the date of the assault. Both of these Defendants attest in their affidavits that they had no such knowledge, and Plaintiff has presented no evidence to contest these Defendants' sworn statements, nor does he even allege such knowledge. Therefore, there is no basis on which to find a viable claim against either of these Defendants for any conduct that occurred prior to the incident of June 16, 2007. <u>Pruitt v.</u> <u>Moore</u>, No. 02-395, 2003 WL 23851094 at *9 (D.S.C. July 7, 2003) [only deliberate or callous indifference on the part of prison officials to a specific known risk of harm states on Eighth Amendment claim], <u>cert.</u> <u>denied</u>, 2004 WL 232748 (4th Cir. 2004); <u>Levy v. State of Ill. Dept. of</u> <u>Corrections</u>, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"]; <u>Farmer</u>, 114 S.Ct. at 1979 [defendants must have engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result".]; <u>see</u> <u>also</u> <u>Pressly v. Hutto</u>,



816 F.2d 977 (4th Cir. 1987).[4]

Similarly, with respect to the period of time following Plaintiff having been found hanging by Defendant Jones, there is again no evidence of any deliberate indifference to a specific known risk of harm to the Plaintiff.  The record before the Court, which Plaintiff has presented no evidence to dispute (and indeed much of his own evidence confirms), shows that upon being found, Plaintiff was immediately sent to the hospital for treatment. See Exhibits 3 and 5 to Curry Affidavit. The evidence further reflects that upon Plaintiff's release from medical care on June 22, 2007, he was transferred to protective custody, resulting in his being transferred to the Lee Correctional Institution. Id., at Exhibits 5 thru 8. See also Plaintiff's Exhibit (Court Docket No. 88-2, at pp. 1-2).  Therefore, there is no evidence that either Toller or Jones was deliberately or callously indifferent to a known risk of harm to the Plaintiff after the time of the cell count at 12:30 p.m. on June 17, 2007. Cf. Miller v. Shelby County, Tenn., 93 F.Supp. 2d. 892, 900 (W.D. Tenn. 2000) [There is no liability if prison officials respond reasonably to a known risk]; Carrigan v. State of Delaware, 957 F.Supp. 1376, 1385 (D.Del. 1997).

This leaves only the period from 10:30 p.m. on June 16, 2007, when the Defendant

---

[4]Since Plaintiff has presented no evidence that either Toller or Jones had any knowledge that Plaintiff was in danger of an attack, Plaintiff's claim that a constitutional violation occurred because the Defendants failed to follow department policy/procedure with respect to inspections made during a shift change does not by itself state a constitutional claim. See Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C. 1992) [violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983]).  See also Scott v. Hamidullah, No. 05-3027, 2007 WL 904803 *5 n.6 (D.S.C. March 21, 2007) (citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)); Johnson v. S.C. Dep't of Corrections, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that defendants did not follow their own policies or procedures, standing alone, does not amount to a constitutional violation."] (citing Riccio, 907 F.2d at 1469 [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]



Toller was doing the evening roll-call count, through 12:30 p.m. the following day, as being at issue.

Plaintiff alleges that when Officer Toller came by his cell during the 12:30 p.m. count, he told Toller

that he "really needed to speak with him, even had my shirt off and pointed to the bruises and red

marks that had started to form on my chest, ribs, stomach and back.  Officer Toller told me that he

was doing roll-call count, but as soon as he was done he promised he would come back to speak with

me.  I asked him to please come back because it was very important, and I seriously need to speak

with him."  Plaintiff does not, however, allege that he told Toller what he needed to talk to him about,

or that he was in fear of his life or personal safety.[5]  Further, according to Plaintiff's allegations, this

was the only time, until Officer Jones found Plaintiff trying to hang himself at around 1:00 to 1:15

p.m. the following day, that Plaintiff said anything to either of the two Defendants.[6]

        These allegations do not provide the basis for a deliberate indifference claim against

Jones, to whom nothing was ever said, or even to Toller, to whom Plaintiff spoke only briefly one

time at 10:30 p.m. on the day of the attack.  Plaintiff does not allege that he told Toller at that time

that he had been attacked, or that he was in danger of or feared another attack.[7]  Rather, by his own

allegations, he merely told Toller to come back and speak with him (assuming these allegations to

---

[5]This allegation is consistent with the grievance Plaintiff filed on August 13, 2007, wherein he repeats that the only thing he said to Officer Toller at that time was that he "needed to talk to him and that it was very important."  see Court Docket No. 1-2, p. 1.

[6]Plaintiff alleges that he did speak to a *different* Officer (not Toller or Jones) during the 12:30 p.m count on June 17, 2007, and was told by that Officer that he would come back after he was done. Plaintiff alleges that he then tried to commit suicide approximately thirty to forty five minutes later. Complaint, at ¶ 18-19.

[7]One of the attachments to Plaintiff's complaint is a purported statement from inmate Larry Powell.  Although submitted as an exhibit by the Plaintiff in support of his claim, Powell confirms that neither he nor the Plaintiff had provided Toller with any additional information, and that neither one of them had even spoken to Jones prior to Jones finding Plaintiff hanging in his cell. See attachments to Plaintiff's Complaint, at pp. 22-25.



be true for purposes of summary judgment, since Toller denies that this conversation, even to that extent, ever took place), and showed him bruises on his person. Grieveson v. Anderson, 538 F.3d 763, 775-777 (7th Cir. 2008) [Deliberate indifference is not shown by whether individual officers should have known about risks to an inmate's safety, but rather whether they did know such risks]. This brief and arguably ambiguous encounter, even when considered in the light most favorable to the Plaintiff, is not sufficient to create a genuine issue of fact that, by failing to return to speak with Plaintiff that evening, Toller demonstrated a deliberate or callous indifference to a specific known risk of harm to the Plaintiff. Grieveson, 538 F.3d at 776 ["[V]ague information did not put the jail officers on notice of a specific threat to [Plaintiff's] safety."]; Borello v. Allison, 446 F.3d 742, 747 (6th Cir. 2006) [Deliberate indifference "requires more than a showing of negligence or even grossly negligent behavior . . . . [T]he corrections officer must have acted with the equivalent of criminal recklessness."]; Pruitt v. Moore, 2003 WL 23851094, *9; Levi, 1997 WL 112833 ["a defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety"]; Farmer v Brennan, 114 S.Ct. at 1979 [Defendant must have engaged in conduct "for the very purpose of causing harm or with the knowledge that harm would result"]; Strickler v. Waters, 989 F.2d at 1382-1383 [Plaintiff must present evidence sufficient to show that "the officials act[ed] with a sufficiently culpable state of mind"]; Cf. Payne for Hicks v. Churchich, 161 F.3d 1030, 1042 (7th Cir. 1998) [state actor can only be held liable for a detainee's suicide if Defendant was deliberately indifferent to a substantial suicide risk.]

In making the finding set forth hereinabove, the undersigned does not intend to signal a lack of concern by the court with regard to the brutal attack received by the Plaintiff. However, the most that can be said from the facts presented is that the Defendant Toller may have been negligent

14



by failing to come back and speak with the Plaintiff after he finished his rounds at 10:30 on the night of June 16, 2007. Of course, Plaintiff is not without a remedy if he believes the actions taken by prison officials were unjustified or even negligent, as he may have a claim under state tort law or some administrative remedy he may pursue. However, the sole question before this Court is whether Plaintiff has submitted sufficient evidence to maintain a *constitutional* claim, not whether he may have a claim under some state law or administrative procedure. See <u>DeShaney v. Winnebago County Dep't of Social Servs.</u>, 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; <u>Baker v. McClellan</u>, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]. He has failed to submit evidence to meet the standard for a unconstitutional claim. <u>Paul v. Davis</u>, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right]. Therefore, the Defendants are entitled to summary judgment on this claim.

### III.

### (Medical Claim)

Plaintiff's medical claim concerns the care he received following the attack of June 16, 2007, and in particular the alleged denial to him of mental health treatment. In order to establish a claim under § 1983 for denial of medical care, Plaintiff must present sufficient evidence to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Farmer v. Brennen</u>, 511 U.S. 825, 837 (1994); <u>Sosebee v. Murphy</u>, 797 F.2d 179 (4th Cir. 1986); <u>Wester v. Jones</u>, 554 F.2d 1285 (4th Cir. 1977); <u>Russell v. Sheffer</u>, 528 F.2d 318 (4th Cir. 1975); <u>Belcher v. Oliver</u>, 898 F.2d 32 (4th Cir.

15



1990).

Significantly for purposes of this claim, neither Toller nor Jones, both correctional officers, had anything to do with Plaintiff's medical care. According to the verified allegations of Plaintiff's complaint, after Defendant Jones found Plaintiff hanging in his cell, Plaintiff was immediately referred to the local hospital for treatment. Complaint, at ¶ 20. All of the evidence presented confirms this account, including Plaintiff's own evidence. See Kenealy Affidavit, attached Exhibits 3-4; attachments to Plaintiff's Complaint, p. 5; attachments to Plaintiff's Memorandum in Opposition, p. 3. While Plaintiff does set forth in his Complaint how, after he was placed in protective custody at the Lee Correctional Institution, later to be moved to the Gillian Center, he was requesting medical care and consultations and either spoke or wrote to various officials concerning his complaints, none of these allegations or the exhibits Plaintiff has provided involve the Defendants Toller or Jones. Indeed, during this period of time, Plaintiff was at a different prison from the one where Toller and Jones worked. In any event, both Toller and Jones attest in their Affidavits that they do not have any responsibilities involving the direct provision of medical care or treatment to inmates, nor did they ever have any responsibilities involving the direct provision of medical care or treatment to the Plaintiff, and Plaintiff has provided no evidence to contradict these sworn statements or to show any involvement by either one of these Defendants in his medical care or treatment.

In order to state a valid claim in 42 U.S.C. § 1983, a Plaintiff must show that the Defendant deprived him of a federal right, and did so under color of state law. Gummis v. Toledo, 446 U.S. 635, 640 (1980). Further, the Defendant must have committed, or have a connection with, the alleged unconstitutional conduct. Barren v Harrington, 152 F.3d. 1193, 1194 (9th Cir. 1999) ["Liability . . . must be based on the personal involvement of the defendant"] cert. denied, 522 U.S.

16



1154 (1999); <u>See also</u> <u>Wilson v. Cooper</u>, 922 F. Supp. 1286, 1293 (N.D. Ill. 1996).  Since Plaintiff

has made no allegations, and has provided no evidence, to connect either Toller or Jones to the

alleged  constitutional deprivation of medical care, they are entitled to summary judgment on this

claim.  <u>Horton v. Marovich</u>, 925 F.Supp. 540 (N.D. Ill. 1996) ["Thus, a Plaintiff suing a government

official in his individual capacity and therefore seeking to hold the official personally liable, must

show that the official personally caused or played a role in causing the deprivation of a federal

right"]; <u>see also</u> <u>Wetherington v Phillips</u>, 380 F. Supp. 426, 428-429 (E.D. N.C. 1974), aff'd, 526 F.2d

591 (4th Cir. 1975); <u>Joyner v. Abbott Laboratories</u>, 674 F. Supp. 185, 191 (E.D. N.C. 1987); <u>Stubbs</u>

<u>v. Hunter</u>, 806 F. Supp. 81, 82-83 (DSC 1992).

## <u>Conclusion</u>

Based on the foregoing, it is recommended that the Defendants' motions for summary

judgment be **granted**, and that  this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____

Bristow Marchant
United States Magistrate Judge

Charleston, South Carolina

October 16, 2008



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

